IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Mary Todd as Trustee of the Ruby Chelson West Residuary Trust,<br><br>    Plaintiff,<br><br>vs.<br><br>Christopher D. Jones, in his official capacity as Executive Director of the North Dakota Department of Human Services,<br><br>    Defendant. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 1:18-cv-150 |

Before the Court is a motion to dismiss filed by Christopher Jones as Executive Director of the North Dakota Department of Human Services ("the Department") on August 27, 2018. See Doc. No. 8. Mary Todd, as Trustee of the Ruby Chelson West Residuary Trust ("Todd"), filed a response on September 25, 2018. See Doc. No. 10. The Department filed a reply on October 16, 2018. See Doc. No. 11. Todd filed a notice of supplemental authority on March 21, 2019. See Doc. No. 13. The Department filed a response to Todd's notice on March 25, 2019. See Doc. No. 14. For the following reasons, the Court grants the Department's motion to dismiss.

**I. BACKGROUND**

This controversy arises from the Department's attempts to recover assets for Medicaid benefits allegedly paid in error on behalf of the late Terry David West ("West"). Todd's complaint asserts the following allegations. West was a ward of the State of North Dakota and received Medicaid benefits. West's mother, Ruby Chelson West, died testate with a will that created a testamentary trust ("the Trust"). West was a beneficiary of the Trust, which contained a spendthrift

provision limiting West's ability to direct the trustee's actions and control the trust assets. Ruby West died in April of 2001, her will was probated, and the Trust was funded. In November of 2017, the Department obtained Letters of Administration for West's estate. The North Dakota State Hospital filed claims against the estate totaling $831,591.20. See In the Estate of Terry David West, Case No. 09-2017-PR-00366. As personal representative of the estate, the Department sued Todd in state district court alleging she breached fiduciary duties she owed West by not paying him benefits during his life as the Trust supposedly required. See Estate of Terry West v. Todd, No. 08-2018-cv-01934.

Todd filed this federal action for declaratory and injunctive relief on July 17, 2018. The state court stayed its proceedings pending the resolution of this lawsuit. Todd's complaint, relying on the Court's federal question jurisdiction as set forth at 28 U.S.C. § 1331, asserts two claims:

> [The Department] is violating 42 U.S.C. §§ 1396a(a)(10)(C)(i), (r)(2)(B) and the federal regulations and policies relating to treatment of trusts, because the Department's unwritten policy for considering trusts with valid spendthrift provisions as available assets establishes a more restrictive evaluation of Mr. West's resources than the methodology use [sic] by the SSI program, for which relief is available pursuant to 42 U.S.C. § 1983.
>
> [The Department] is violating 42 U.S.C. § 1396p(b), because the Department is seeking to recover from the Trust, which is not part of Mr. West's estate, for which relief is available pursuant to 42 U.S.C. § 1983.

See Doc. No. 1, p. 7. Todd requests the Court grant declaratory relief and permanently enjoin the Department from acting in the above-described manner. The Department filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on August 27, 2018. See Doc. No. 8.

## II. LEGAL DISCUSSION

The Department argues Todd's first claim—that the Department's Medicaid eligibility policy is improperly more restrictive than the Supplemental Security Income ("SSI") eligibility rules—fails to state a claim for which relief can be granted. The Department asserts that under federal law, North Dakota can in fact apply eligibility requirements that are more restrictive than the SSI rules. As to the second claim—that the trust is not part of West's probate estate—the Department urges the Court to abstain from deciding the issue because it is a probate matter and the pending state court litigation will answer the question. The Court agrees with the Department on both claims.

### A. TODD'S CLAIM THAT NORTH DAKOTA'S MEDICAID ELIGIBILITY POLICY IS IMPROPERLY MORE RESTRICTIVE THAN SSI RULES

Todd relies on 42 U.S.C. §§ 1396a(a)(10)(C)(i) and (r)(2)(B) to support her argument that the Department is violating federal law by considering a trust with a valid spendthrift provision as an available resource. Section 1396(a)(10)(C)(i) requires Medicaid eligibility criteria be "no more restrictive" than the criteria used to determine SSI eligibility. Section 1396(r)(2)(B) defines the term "no more restrictive" in this context. However, as explained below, Congress has provided states with a limited exception—termed the "209(b) option"—that exempts states from this requirement. See 42 U.S.C. § 1396a(f).

The Department has moved to dismiss Todd's first claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) mandates dismissal of a complaint if it fails to state a claim upon which relief can be granted. To determine whether dismissal is warranted, the court must assume the complaint's factual allegations are true and draw all reasonable inferences in the

3

plaintiff's favor. Monson v. Drug Enf't Admin., 589 F.3d 952, 961 (8th Cir. 2009.). Conclusory legal allegations need not be accepted as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Title XIX of the Social Security Act of 1965 established the Medicaid program. See 42 U.S.C. § 1396 *et seq*. The Medicaid program provides federal funds to reimburse states for the cost of providing healthcare to persons who cannot afford it. Savage v. Toan, 795 F.2d 643, 644 (8th Cir. 1986). State Medicaid plans must comply with federal law. Id. When it comes to determining whether an individual is eligible for Medicaid, there are two types of states: SSI states and Section 209(b) states. Herweg v. Ray, 455 U.S. 265, 268 (1982); see also Matarazzo v. Rowe, 623 A.2d 470, 474 (Conn. 1993).

SSI states use the SSI rules to determine Medicaid eligibility. In other words, in those states, if individuals qualify for SSI, they also qualify for Medicaid. See Program Operations Manual System ("POMS") SI 01715.010.[1] Section 209(b) states "use at least one eligibility criterion more restrictive than the SSI program." Id. The Eighth Circuit Court of Appeals has provided a detailed history of the Section 209(b) option, which the Court recites in full:

> Initially, the Medicaid program required participating states to provide medical assistance to persons who received payments under one of four welfare programs established elsewhere in the Social Security Act. These programs were Old Age Assistance, Aid to Families with Dependent Children, Aid to the Blind, and Aid to the Permanently and Totally Disabled. Persons receiving aid under one of these four programs were referred to as the "categorically needy." *See generally Schweiker v. Gray Panthers*, 453 U.S. 34, 37, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460 (1981).
>
> Since Medicaid's enactment, however, the social security programs have undergone substantial change. In 1972, Congress restructured the social security programs and replaced three of the four above-mentioned welfare programs with a new program entitled Supplemental Security Income for the Aged, Blind, and Disabled (SSI), 42 U.S.C. § 1381 *et seq*. Under SSI, the federal government assumed responsibility for both the funding of payments and setting the eligibility

---

[1] The Program Operations Manual System "is a primary source of information used by Social Security employees to process claims for Social Security benefits." Social Security Administration's Policy Information Site, *About POMS*, https://secuire.ssa.gov/apps10/poms.nsf/home?readform.

4

> standards. In addition, Congress retained the requirement that all recipients of categorical welfare assistance—now including the new SSI program—were also entitled to Medicaid. Because the new SSI standards were broader than those that had existed before, a consequence of this restructuring was that the number of individuals eligible for Medicaid increased significantly in many states. Congress was concerned that states whose Medicaid liability increased as a result of SSI would withdraw from the Medicaid program. Thus, it offered to the states what is known as the section 209(b) option, set forth in 42 U.S.C. § 1396a(f). *See generally Schweiker v. Gray Panthers*, 453 U.S. at 38–39, 101 S.Ct. 2637–38.2.
>
> Under this option, states can opt out of the requirement of providing Medicaid assistance automatically to persons who receive SSI and elect instead to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972. "In other words, the § 209(b) option allows the States to avoid the effect of the link between the SSI and Medicaid programs: States may become either '§ 209(b) States' or 'SSI States.' " *Herweg v. Ray*, 455 U.S. 265, 268, 102 S.Ct. 1059, 1063, 71 L.Ed.2d 137 (1982).

Darling v. Bowen, 878 F.2d 1069, 1070-71 (8th Cir. 1989).

It is undisputed that North Dakota is a Section 209(b) state. See Wahl v. Morton Cty. Soc. Services, 574 N.W.2d 859, 866 (N.D. 1998); see also POMS SI 01715.010. "[S]ection 209(b) states' Medicaid eligibility requirements which are more restrictive than Supplemental Security Income program eligibility rules do not violate federal standards." Wahl, at 866. Rather, Section 209(b) states must apply eligibility criteria no more restrictive than the state's Medicaid plan in effect on January 1, 1972. Herweg, 455 U.S. at 268. Todd asks the Court to declare North Dakota's Medicaid eligibility policy violates federal law because it is more restrictive than the SSI program. Because North Dakota is a Section 209(b) state, it may have more restrictive eligibility standards, and thus the Court cannot grant such relief. Rule 12(b)(6) dismissal is warranted.

### B.  TODD'S CLAIM THAT THE TRUST IS NOT AN ESTATE ASSET

Todd's second claim requests the Court declare the Trust assets are not part of West's estate and the Department's recovery efforts consequently violate 42 U.S.C. § 1396p(b) (dealing with

5

recovery from decedent's estates). The Department urges the Court to abstain from deciding the issue pursuant to Federal Rule of Civil Procedure 12(b)(1) on two grounds: the probate exception to federal court subject matter jurisdiction and the *Colorado River* Abstention Doctrine. The Court concludes the probate exception clearly applies to Todd's claim. Given this holding, the Court does not reach the merits of the Department's *Colorado River* abstention argument.

Parties may assert a lack of subject matter jurisdiction by motion under Fed. R. Civ. P. 12(b)(1). This defense may be brought in two ways: by facial attack or by factual attack. Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914 (8th Cir. 2015). A facial attack simply asserts the plaintiff has not plead a basis for subject matter jurisdiction. Branson Label, at 914. In a facial attack, the Court must afford the non-moving party the benefit of the Rule 12(b)(6) safeguards, and it may only consider the pleadings and "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." Carlsen v. Gamestop, Inc., 833 F.3d 903, 906 (8th Cir. 2016) (quoting Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 668 (8th Cir. 2012)). A factual attack asserts the actual existence of subject matter jurisdiction is lacking "irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id. at 914-915 (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). The Court will treat this motion as facial attack and consider only the pleadings.

The probate exception is a judicially-created limitation on federal court subject matter jurisdiction. Sianis v. Jensen, 294 F.3d 994, 997 (8th Cir. 2002); see also Brooks v. Wiesz, 572 F. Supp. 2d 1134, 1137 (D.N.D. 2008). The United States Supreme Court refined and limited the probate exception in *Marshall v. Marshall*, 547 U.S. 293 (2006). The Supreme Court explained:

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from disposing of property that is in the custody of a state probate court. But

6

it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Id. at 311-12; see also McAninch v. Wintermute, 491 F.3d 759, 766 (8th Cir. 2007) (federal courts not barred from deciding matters outside the confines of probating a will, estate administration, or adjudicating rights to property in the custody of state court).

The question Todd asks the Court to decide—whether the Trust assets constitute estate property—is clearly within the confines of estate administration. One of the first and main tasks of administering an estate is determining what constitutes the estate property. See N.D. Cent. Code § 30.1-12-05 (granting state district court jurisdiction over probate proceedings to "determine title to property alleged to belong to the estate"). "Determining what property constitutes the estate goes to the very nature of the probate proceeding . . . ." In re Estate of Bartelson, 806 N.W.2d 199, 202 (N.D. 2011).

Before this case was filed, probate proceedings had begun and the parties were litigating the issue of whether the trust constitutes probate property. See Defendant's Counterclaim at Index No. 12, p. 5, Estate of Terry West v. Todd, No. 08-2018-cv-01934 ("The Trust and its contents are not and were not probate assets and the Plaintiff is not a beneficiary of the Trust."). Because Todd's claim asks the Court to decide an issue within the confines of estate administration, the Court must abstain from adjudication under the probate exception to federal subject matter jurisdiction. Nonetheless, if rulings in the state court proceedings necessitate a determination of Medicaid or other federal law, this Court remains an available forum.

III. **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, the Defendant's motion to dismiss is **GRANTED** (Doc. No.

7

8). The Plaintiff's first claim is **DISMISSED WITH PREJUDICE**. The Plaintiff's second claim is **DISMISSED WITHOUT PREJUDICE**.

    **IT IS SO ORDERED**

Dated this 6th day of May, 2018.

                                                  */s/ Daniel L. Hovland*
                                                  Daniel L. Hovland, Chief Judge
                                                  United States District Court